UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEANETTE S. OLCZAK,
        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
        Defendant.

DECISION & ORDER
18-cv-0173-JWF

---

## Preliminary Statement

Plaintiff Jeanette S. Olczak ("plaintiff" or "Olczak") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Docket ## 10, 12. For the reasons that follow, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 12) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Background and Procedural History

Plaintiff filed her application for DIB on April 9, 2014, alleging a disability beginning on January 1, 2014. Administrative Record ("AR"), Docket # 8, at 146-53. Plaintiff's application was initially denied on July 30, 2014. AR at 76-89. Plaintiff, her

1

attorney, and vocational expert Joy Kilpatrick appeared before Administrative Law Judge Robert T. Harvey on August 18, 2016 for an administrative hearing. See AR at 38-75. The case was reassigned to Administrative Law Judge Michael W. Devlin ("the ALJ") upon Judge Harvey's retirement. AR at 18. The ALJ issued an unfavorable decision on December 7, 2016. AR at 18-32. Plaintiff timely filed a request for review by the Appeals Council, which was denied on December 4, 2017. AR at 1-6. Plaintiff commenced this action on February 2, 2018 (Docket # 1) and filed her motion for judgment on the pleadings on October 15, 2018 (Docket # 10). The Commissioner filed its motion for judgment on the pleadings on December 14, 2018 (Docket # 12) and Olczak replied on January 4, 2019 (Docket # 13).

For purposes of this Decision and Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review, which requires that the Commissioner's decision be supported by substantial evidence. See Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007) (so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed), cert.

denied, 551 U.S. 1132 (2007).

## Discussion

<u>Plaintiff's Residual Functional Capacity ("RFC")</u>: The ALJ found that plaintiff had the following severe impairments: lumbago, chronic obstructive pulmonary disease ("COPD"), hypertension, anxiety, depression, and IV drug abuse in remission. AR at 20. No impairments met or medically equaled the severity of a listed impairment. AR at 22. The ALJ's RFC assessment was that Olczak could perform medium work as defined in 20 C.F.R. § 404.1567(c), except that she could not work in areas with unprotected heights; could not work around heavy, moving, or dangerous machinery; could not work in areas where she would be exposed to excessive pulmonary irritants; could not climb ladders, ropes, or scaffolds; had occasional limits in bending, climbing, stooping, kneeling, squatting, balancing, and crawling; and was occasionally limited in her ability to understand, remember, and carry out detailed instructions. AR at 24.

<u>Treating Physician Rule</u>: Plaintiff's primary argument is that the ALJ violated the treating physician rule by improperly discounting the opinion of Dr. Paul Updike. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings (Docket # 10-1), at 20-25. I agree.

The treating physician rule, set forth in the Commissioner's own regulations, "mandates that the medical opinion of a claimant's

3

treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources."). Where, as here, an ALJ gives a treating physician's opinion something less than "controlling weight," he must provide good reasons for doing so. Our circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand. See Schaal v. Apfel, 134 F.3d 496, 503-05 (2d Cir. 1998); see also Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").

Our circuit has also been blunt on what an ALJ must do when deciding not to give controlling weight to a treating physician:

> To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.

Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (emphasis added) (internal citations, quotations, and alterations omitted).

The foregoing pays tribute to the failure of the ALJ to follow either the letter or the spirit of the treating physician rule. Dr. Updike took the time to assist the ALJ by completing two separate RFC questionnaires. See AR at 460-65, 483-87. The first questionnaire was completed on April 23, 2014. AR at 465. Dr. Updike indicated that plaintiff could sit and stand/walk for less than two hours out of an eight-hour work day and could only sit for up to 30 minutes at a time before needing to walk for ten minutes. AR at 462-63. Additionally, Dr. Updike opined that plaintiff required a cane while standing and walking, could not lift any amount of weight in a competitive work situation, and required unscheduled breaks. AR at 463. Dr. Updike further opined that plaintiff could rarely twist, stoop, crouch, and climb stairs, and could never climb ladders. AR at 464. According to Dr.

5

Updike, plaintiff would need to be able to shift positions from sitting, standing, or walking at will. AR at 463.

The second questionnaire was completed on June 9, 2014. AR at 483-87. Dr. Updike opined that plaintiff could rarely lift ten pounds or less, would need to walk for five to six minutes every hour and a half, and could only sit for thirty minutes at a time. AR at 484-85. Dr. Updike maintained that plaintiff could sit, stand, or walk for less than two hours a day, would require unscheduled breaks throughout the work day, and would need to be able to shift positions from sitting, standing, or walking at will. AR at 485. He additionally opined that plaintiff could still rarely twist, stoop, crouch, or climb stairs, and could never climb ladders. AR at 486.

The ALJ's analysis of Dr. Updike's findings and opinions can fairly be described as perfunctory. The ALJ devoted a single sentence of his analysis to each RFC questionnaire. He assigned only "little weight" to the April 23, 2014 questionnaire because the opinion was "not supported by examinations which were within normal limits." In the very next sentence of his opinion the ALJ assigned "little weight" to Dr. Updike's June 9, 2014 questionnaire because it was "not supported by the substantial medical evidence." AR at 30. Given the analytical requirements of the treating physician rule as set forth by the Second Circuit, these "explanations" are (1) so superficial that they fall far short of

6

providing "good reasons" and (2) are so cryptic that they appear to be rendered without any meaningful analysis.

As to the ALJ's statement that Dr. Updike's April 2014 opinion was not supported because plaintiff had examinations that were within "normal limits," a review of the record suggests the ALJ "cherry picked" certain portions of the medical evidence. A fair review of the record reveals ample evidence to support Dr. Updike's findings and opinions, including entries in Dr. Updikes' treatment records. See, e.g., AR at 324 (numbness in right thigh and lower leg); AR at 332 ("increasing hip pain. Sometimes has trouble standing when she squats down"; "more and more trouble walking"); AR at 338 ("Back pain is stable but can not walk long distances without pain"); AR at 346-48 (review of spine MRI showing "fused vertebrae even though [plaintiff] has never had back surgery" and diagnosing "significant spine disease").

In addition to Dr. Updike's own records, the treating physician's medical opinions are consistent with other evidence in the record. For example, on September 15, 2014, Dr. Gregory Castiglia, plaintiff's spine specialist, found that plaintiff had "hesitation with range of motion of the lumbar spine in both flexion and extension due to stiffness and pain," "slight tenderness to palpation of the lumbar spine and paraspinal muscles," and "pain with hip flexion bilaterally." AR at 568. On March 18, 2016, Doctor of Nursing Practice Louis Pawlowski

7

diagnosed plaintiff with degenerative disc disease. AR at 846. Olczak's treatment providers for her COPD noted her complaints of back pain, difficulty walking half a block, and plaintiff's concern over an abundance of health-related absences from work causing her stress. See AR at 285, 287.

Dr. Updike's opinions were further corroborated by other record evidence. Eugene Pijanowski, plaintiff's significant other who has known plaintiff for 24 years, submitted a sworn affidavit explaining to the ALJ that plaintiff's mental and physical condition had gotten progressively worse in the six months preceding the ALJ's determination.[1] AR at 209. Where prior to her onset date she was able to work, be social, and "do physical things," she no longer can. AR at 203, 206-07. Everyday activities like dressing and shopping for a few items take much longer and are difficult for the plaintiff as "you can see she's in pain" when doing them. AR at 203, 205. According to Mr. Pijanowski, plaintiff no longer has homecooked meals and can do "very little maybe dusting or wiping the table" in the way of house

---

[1] Though the ALJ addressed Mr. Pijanowski's testimony, his similarly conclusory reason for discounting it is not sufficient. See AR at 30 ("Mr. Pijanowski's allegations concerning the claimant's symptoms are not entirely consistent with the evidence of record as a whole."); Matejka v. Barnhart, 386 F. Supp. 2d 198, 207 (W.D.N.Y. 2005) (finding ALJ improperly evaluated plaintiff's credibility by failing to consider, inter alia, supporting affidavit because "'[i]n determining whether a claimant is disabled the Secretary must consider...the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him....'") (quoting Carroll v. Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

chores. AR at 204. Mr. Pijanowski has observed that plaintiff's memory is "terrible," and she cannot sit, stand, or walk for very long. AR at 206-07, 209.

Finally, plaintiff's own testimony supported Dr. Updike's objective findings. Plaintiff testified she could only walk half a block, stand for 10 to 15 minutes, and that sitting caused difficulties with her lower back pain. See AR at 58-59. She cannot squat, stoop, or climb stairs. AR at 60. Her arms shake, and she cannot push or pull. AR at 59. She microwaves more than she cooks and can clean a little bit, but Mr. Pijanowski has to do the dishes, laundry, vacuuming, and other household chores. AR at 56.

It was error for the ALJ to dismiss Dr. Updike's opinions without providing adequate reasons for doing so. While there is no "absolute bar to crediting only portions of medical source opinions," (Younes v. Colvin, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)), where the ALJ's "'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)). Furthermore, "[t]he selective adoption of only the least supportive portions of a medical source's statements is not permissible." Phelps v. Colvin, No. 12-CV-976S, 2014 WL 122189,

9

at *4 (W.D.N.Y. Jan. 13, 2014) (internal quotations and brackets omitted); see Caternolo v. Astrue, No. 6:11-CV-6601(MAT), 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted) (collecting cases); Searles v. Astrue, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) ("An ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified.").

It also worth mentioning that if an "ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998); see Cabassa v. Astrue, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *10 (E.D.N.Y. June 13, 2012) ("[I]f an ALJ believes that a treating physician's opinion lacks support or is internally inconsistent, he may not discredit the opinion on this basis but must affirmatively seek out clarifying information from the doctor."); Santiago v. Astrue, No. 11 Civ. 6873(BSJ)(AJP), 2012 WL 1899797, at *19 (S.D.N.Y. May 24, 2012)(remand required where ALJ did not ask treating physician "to explain the possible inconsistencies in his assessments."); Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) ("[I]f a physician's finding in a report is

believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician to fill any clear gaps before dismissing the doctor's opinion.").

The ALJ's terse rationale for giving little weight to Dr. Updike's June 2014 RFC opinion is equally problematic. Simply stating that the opinion "is not supported by substantial medical evidence" without any explanation or analysis prevents meaningful review and infers "boilerplate" claim processing. See Cervantez v. Comm'r of Soc. Sec. Admin., 262 F. Supp. 3d 921, 929 (D. Ariz. 2017) ("[T]he ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving [treating doctor's] opinions little weight," where ALJ's explanation was only that the opinion was "not supported by the medical evidence of record."); Cordero v. Colvin, No. 1:15-cv-00845(MAT), 2016 WL 6829646, at *3 (W.D.N.Y. Nov. 21, 2016) ("[T]he ALJ stated that Dr. Lawrence's opinion was 'without substantial support from the other evidence of record, which obviously renders it less persuasive.' The ALJ did not identify, much less allude to, which evidence of record failed to offer 'substantial support' for Dr. Lawrence's opinion. This was error, and it precludes the Court from conducting a meaningful review of whether the ALJ's decision is supported by substantial evidence.") (internal citations to the record omitted); Svay v. Colvin, No. 15-CV-6080, 2016 WL 922085, at *4

(W.D.N.Y. Mar. 11, 2016) ("Even if the ALJ had substantial evidence to deny controlling weight to Dr. Chang's opinion, he must make explicit findings to enable a court to review his decision with more than mere conjecture.") (internal quotation marks and citation omitted); Ely v. Colvin, No. 14-CV-6641P, 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016) ("[T]he ALJ's statement that the rejected opinions were 'not supported by the record as a whole' is too conclusory to constitute a 'good reason' to reject the treating psychiatrist's opinions. . . .Without identifying the alleged inconsistencies in the record, the ALJ has failed to provide any basis for rejecting [the treating doctor's] opinions.").

The Commissioner does not dispute that the ALJ's analysis of Dr. Updike's opinions was truncated but contends that the ALJ complied with the treating physician rule by offering a "detailed discussion preceding his assignment of weight" to Dr. Updike's opinions. Docket # 12-1, at 11. This argument is not persuasive. There is a difference between an ALJ's description of the content of a treating physician's opinions and providing a legally sufficient rationale for the weight assigned to those opinions. Indeed, here, the ALJ's summary of Dr. Updike's opinions only served to highlight the inconsistencies between those opinions and the RFC assigned by the ALJ. See AR at 26. This neither constitutes sufficient explanation for the weight assigned nor comprehensively sets forth the reasons for giving Dr. Updike's

12

opinions little weight as required by the treating physician rule. See Tuper v. Berryhill, No. 17-CV-6288P, 2018 WL 4178269, at *5 (W.D.N.Y. Aug. 31, 2018) ("The ALJ's one-sentence explanation for discrediting [the treating physician's] opinions does not satisfy the treating physician rule. The ALJ's statement that [the treating physician's] four opinions are all 'inconsistent with the treatment record' is far too conclusory to constitute a 'good reason' for discounting the weight given to the opinions of Tuper's treating physician."); McDonald v. Berryhill, No. 16-CV-926-FPG, 2017 WL 5712304, at *4 (W.D.N.Y. Nov. 28, 2017) (remanding because "the ALJ['s] . . . conclusory statements that 'there is no evidence to substantiate' [the treating physician's] opinion and that it is 'not based on objective evidence of record,' without more, do not constitute good reasons to discount that opinion.").

In sum, the ALJ improperly discounted the opinions of plaintiff's treating physician. The ALJ's reasons for affording "little weight" to Dr. Updike's opinions were insufficiently explained and, accordingly, remand is required.

## Conclusion

Plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the defendant's motion for judgment on the pleadings (Docket # 12) is **denied**, and the case is remanded for

13

further proceedings consistent with this Decision and Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: August 19, 2019
       Rochester, New York